J-S42001-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BARBARA PECK | |
| Appellant | No. 393 WDA 2013 |

Appeal from the PCRA Order November 7, 2012
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013737-2006

BEFORE:  PANELLA, J., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, J.                    **FILED NOVEMBER 24, 2014**

Appellant, Barbara Peck, appeals from the order entered November 7, 2012, by the Honorable Kevin G. Sasinoski, Court of Common Pleas of Allegheny County, which denied Peck's Post Conviction Relief Act (PCRA)[1] Petition.  Additionally, Appellant's court-appointed counsel, Christy P. Foreman, Esquire, has filed an application to withdraw as counsel.  After careful review, we affirm the trial court's order and grant Attorney Foreman's application to withdraw as counsel.

A prior panel of this Court set forth the facts and procedural history of this case.

---

[1] 42 PA.CONS.STAT.ANN. § 9541, *et seq*.

Appellant fatally shot her husband Russell Peck while he was sleeping. The following facts were adduced at the jury trial through the testimony of Detective Lawrence Carpico, neighbors to the Appellant's residential home—Dan and Layla Weiss, and neighbors to her husband's seasonal cottage—Robert Cimino and Shari Samter-Cimino, all of which corroborated Appellant's confession.

At trial, Detective Carp[]ico testified that Appellant confessed the following to him. Appellant and her husband were married for twenty years. The marriage started to deteriorate and Appellant asked him for a divorce. Her husband responded by telling Appellant "that she was welcome to leave at anytime but she wasn't getting anything from the business." N.T. Trial, 8/3-4/09, at 139. [Appellant's husband owned a construction business where Appellant worked]. On September 15, 2006, Appellant arrived home in the evening and read a book. When her husband came home, she went for a drive for a few hours, with the hope that when she returned, he would already be asleep. When she returned he was in fact sleeping.

Appellant waited for a period of time and then got into bed with him. Three days prior to the incident, she placed a gun under their bed. Earlier that day she checked the gun "to ensure that it was still loaded. [Appellant] characterized her husband as being sneaky and said that she wanted to check the gun at that point to ensure that he hadn't removed the bullets from the gun." *Id*. at 142. She retrieved the gun that night sometime after she got into bed, pointed it to the "silhouette of his head" and fired. *Id*. at 143. Appellant got out of the bed and shot him a second and third time because she wanted to ensure that he was dead. A snoring sound was coming from him, like that of a wounded animal, so she closed the window so that no one would hear him. Appellant's neighbor, Dan Weiss, testified that he heard a snoring sound coming from the residence.

Detective Carpico testified that Appellant got into her car and left the scene. She stopped her car, walked ten to fifteen feet, and buried the gun under a log. She drove around for ten to twelve hours, and then traveled to a camp owned by her husband and sat in the car. Robert Cimino and Shari Samter-Cimino, who live at the camp all year, testified they noticed Appellant sitting in her car. Mr. Cimino approached Appellant first. Appellant told him that she killed her husband. Mr. Cimino called the police and Mrs. Cimino called for an ambulance

because Appellant took five to seven Xanax pills and collapsed. Appellant was first taken to the hospital to be treated for an overdose and was subsequently arrested by Detective Carp[]ico and his partner.

Detective Carp[]ico testified that Appellant waived her *Miranda* rights and gave several confessions, one of which was recorded. He asked Appellant to describe her relationship with her husband, specifically, whether he was physically abusive. Appellant replied: "[H]ad he ever struck [me], he would have been dead a long time ago." N.T. at 137. However, Appellant contended that he was emotionally abusive towards her, in the form of talking behind her back and humiliating her at their work. Appellant also told officers that she was forced to have several abortions, the last one in June 2006, because her husband did not want her to have his children. When detectives asked her why she did not leave him, Appellant responded that "she didn't want to see him inflict this kind of evil on other people, and she felt like she was entitled to her portion of the business." *Id*. at 147. Appellant did not testify at trial.

After both parties rested at trial, defense counsel moved for the court to instruct the jury on the charge of voluntary manslaughter. The court denied his request and noted counsel's "continuing objection." *Id*. at 169. The jury was charged with whether the Commonwealth proved first or third-degree murder.

On August 4, 2009, the jury found Appellant guilty of first-degree murder. She was sentenced on October 27, 2009 to life imprisonment without parole.

*Commonwealth v. Peck*, 2001 WDA 2009, slip op. at 1-5 (Pa. Super., March 11, 2011) (unpublished memorandum) (footnotes omitted). On appeal, this Court affirmed Appellant's judgment of sentence, and the Pennsylvania Supreme Court denied allocatur. *See id*.; *Commonwealth v. Peck*, 27 A.3d 1015 (Pa. 2011) (Table).

Appellant filed a timely *pro se* PCRA petition, and the PCRA court appointed counsel. Appointed counsel filed a *Turner/Finley* no-merit letter and requested to withdraw. The PCRA court granted counsel permission to

withdraw and filed notice of its intent to dismiss Appellant's PCRA petition. On November 7, 2012, the PCRA court dismissed Appellant's petition.

Appellant filed a timely *pro se* appeal. The PCRA court again appointed counsel in response to this Court's request to provide notification of Appellant's representation status. Appointed counsel filed a concise statement of errors complained of on appeal and the trial court filed a responsive opinion.

Preliminarily, we note that Appellant's court-appointed counsel has submitted an **Anders**[2] brief, which is procedurally proper for counsel seeking to withdraw on *direct* appeal. This is a *collateral* appeal. Pennsylvania law requires counsel seeking to withdraw from representing a petitioner under the PCRA to file a 'no-merit' letter pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). **See Commonwealth v. Karanicolas**, 836 A.2d 940, 947 (Pa. Super. 2003). However, this Court has held that, "because an **Anders** brief provides greater protection to the defendant, we may accept an **Anders** brief in lieu of a **Turner/Finley** letter." **Commonwealth v. Fusselman**, 866 A.2d 1109, 1111 n.3 (Pa. Super. 2004). Accordingly, we will now proceed to determine whether counsel's

---

[2] **Anders v. California**, 386 U.S. 738 (1967).

motion to withdraw meets the criteria required under a ***Turner/Finley*** analysis.

> Counsel petitioning to withdraw from PCRA representation must proceed ... under [***Turner***, ***supra*** and ***Finley***, ***supra*** and] ... must review the case zealously. ***Turner/Finley*** counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.

> Counsel must also send to the petitioner: (1) a copy of the "no merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.

> * * *

> [W]here counsel submits a petition and no-merit letter that ... satisfy the technical demands of ***Turner/Finley***, the court— trial court or this Court—must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

***Commonwealth v. Doty***, 48 A.3d 451, 454 (Pa. Super. 2012) (citation omitted). ***See also Commonwealth v. Widgins***, 29 A.3d 816, 817 n.2, 818-819 (Pa. Super. 2011).

Here, counsel has substantially complied with the foregoing procedural requirements. Accordingly, we will proceed to examine whether any of the issues counsel raises on appeal are of merit:

1. Whether trial counsel was ineffective for failing to investigate and present a battered woman defense?

2. Whether trial counsel was ineffective for failing to investigate and prove a diminished capacity defense?

- 5 -

3. Whether trial counsel was ineffective for failing to "employ experts, i.e., investigators, pharmacologists, psychiatrists, previous records of documented abusive issues to prove to the court that they were available at the time of trial, or to ask for funding from the court?"

4. Whether trial counsel was ineffective for failing to bring in family witness[es] that were willing to testify to the [Appellant's] character and to the deteriorating marriage and other areas?

5. Whether the trial court erred by failing to give a jury instruction on voluntary manslaughter.

6. Whether the evidence was insufficient to support Appellant's first degree murder conviction.

*Anders* Brief at 6.

Our standard of review is well-settled.

> When reviewing the propriety of an order granting or denying PCRA relief, this Court is limited to determining whether the evidence of record supports the determination of the PCRA court and whether the ruling is free of legal error. Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record.

*Commonwealth v. Rachak*, 62 A.3d 389, 391 (Pa. Super. 2012), *appeal denied*, 67 A.3d 796 (Pa. 2013) (citations omitted).

A PCRA petitioner is eligible for relief if the claim is cognizable under the PCRA. *See* 42 Pa.C.S.A. § 9543. Cognizable claims include those that allege ineffectiveness of counsel that undermined the truth-determining process. *See* 42 Pa.C.S.A. § 9543(a)(2)(ii).

Appellant asserts several instances in which she believes trial counsel was ineffective. It is well-settled that "[a] criminal defendant has the right to effective counsel during . . . trial." *Commonwealth v. Rathfon*, 899

A.2d 365, 369 (Pa. Super. 2006) (citation omitted). Further, counsel is presumed effective, and an appellant bears the burden to prove otherwise. *See Commonwealth v. Bennett*, 57 A.3d 1185, 1195 (Pa. 2012).

A PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Pennsylvania has further refined the *Strickland* test into a three-prong inquiry. An appellant must demonstrate that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and (3) the appellant suffered actual prejudice as a result. *See Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987). A failure to satisfy any prong of the *Pierce* test will require rejection of the claim. *See Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014). Moreover, deference is given to the PCRA court's credibility determination if supported by the record. *See Commonwealth v. Medina*, 92 A.3d 1210, 1214 (Pa. Super. 2014).

Appellant first argues that trial counsel was ineffective for failing to present a battered woman defense. "[E]xpert testimony regarding battered woman syndrome ... is admissible as probative evidence of the defendant's state of mind as it relates to a theory of self-defense." *Commonwealth v. Miller*, 634 A.2d 614, 621-622 (Pa. Super. 1993). "The syndrome does not represent a defense to homicide in and of itself, but rather, is a type of evidence which may be introduced on the question of the reasonable belief

requirement of self-defense in cases which involve a history of abuse between the victim and the defendant." *Id*. at 622. The failure to present such evidence does not constitute *per se* ineffectiveness. *See id*.

Here, there is simply no evidence that Appellant suffered physical, sexual or emotional abuse by her husband such that would rise to the level of a battered spouse. Appellant expressly denied that that she was physically abused during her confession to Detective Carpico. Appellant's first PCRA counsel, Scott Coffey, Esquire, notes in his *Turner/Finley* No-Merit Letter, filed May 7, 2012, that although Appellant claimed she was emotionally abused by her husband, psychiatrist Dr. Barbara Beadles examined Appellant and determined that no psychiatric defenses or conditions were applicable to Appellant's case. *See Turner/Finley* No-Merit letter, 5/7/12 at 7-8. As there was simply no history of abuse upon which to sustain a theory of battered spouse syndrome, we cannot deem counsel to be ineffective for failing to pursue a meritless claim.

We reach the same conclusion as to Appellant's claim that counsel was ineffective for failing to present a diminished capacity defense. "A diminished capacity defense requires that a defendant establish he had a mental defect at the time of a murder that affected his cognitive abilities of deliberation and premeditation necessary to formulate specific intent to kill." *Commonwealth v. Fears*, 86 A.3d 795, 804 n.1 (Pa. 2014) (citation omitted). The record is devoid of any evidence to support a claim that

Appellant suffered a mental defect at the time of the murder, and, in fact, Dr. Beadle's opinion that Appellant had no psychiatric conditions when she killed her husband refutes such a claim. Therefore, trial counsel was not ineffective for failing to present a meritless defense.

Appellant's third claim that trial counsel was ineffective for failing to present experts or introduce documents to prove a history of abuse is similarly meritless and refuted by the record. As noted, Appellant expressly denied a history of abuse and, contrary to Appellant's assertions otherwise, trial counsel did retain a psychiatrist who determined that no psychiatric defenses were available. This claim fails.

Appellant next argues that trial counsel was ineffective for failing to call family witnesses who were willing to testify to her character and to the deteriorating marriage. Trial counsel will not be deemed ineffective for failing to call a witness to testify unless it is demonstrated that:

> (1) the witness existed; (2) the witness was available; (3) counsel knew of, or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony was so prejudicial to petitioner to have denied him or her a fair trial.

***Commonwealth v. Brown***, 18 A.3d 1147, 1160-1161 (Pa. Super. 2011) (citation omitted), ***appeal denied***, 611 Pa. 677, 29 A.3d 370 (2011).

Instantly, Appellant does not establish the identity of any witnesses, their availability at the time of trial, or whether trial counsel was informed of the existence of these alleged witnesses. Appellant does not even set forth

the substance of the witnesses' testimony.  Without this necessary evidence we are unable to conclude that the "the absence of the testimony was so prejudicial to petitioner to have denied him or her a fair trial."  **Brown, supra**.   As such, Appellant's claim of ineffective assistance in this regard fails.

Lastly, we find that Appellant is not eligible for PCRA relief on her two remaining claims on appeal.  To the extent Appellant claims that the trial court erred by failing to give a jury instruction on voluntary manslaughter, this issue has been previously litigated, and thus, is not cognizable under the PCRA.  **See** 42 Pa.C.S. § 9543(a)(3).   "A claim is previously litigated if the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue."  **Commonwealth v. Daniels**, --- A.3d ---, ---, 2014 WL 5505024 at *6 (Pa. Super. filed Oct. 30, 2014).  Appellant raised this claim on direct appeal, and a panel of this Court determined that the trial court's decision not to issue a voluntary manslaughter jury instruction was not in error.  **See Peck**, **supra**, 2001 WDA 2009, slip op. at 5-9.

Appellant is similarly ineligible for PCRA relief on her claim that the evidence was insufficient to support her first-degree murder conviction.  An allegation is waived "if the petitioner could have raised it but failed to do so before trial, at trial, on appeal or in a prior state postconviction proceeding."  **See** 42 Pa.C.S. § 9544(b).   As Appellant could have challenged the

sufficiency of the evidence to support her conviction on direct appeal, but did not do so, we find that this claim waived.

Based on the foregoing, and after conducting our own independent review of the record, we agree with counsel's conclusion that Appellant's appeal lacks merit. Accordingly, we affirm the order of the PCRA court dismissing the petition for post-conviction relief and grant counsel's application to withdraw.

Order affirmed. Petition to withdraw as counsel is granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/24/2014